I have a question. How was the arbitrator chosen in this case? The arbitrator is chosen by agreement of the parties. By what? By agreement of the parties. The parties in each case select an arbitrator. Sometimes they have a panel that they rotate through or they may just agree on the arbitrator. Okay. It sounds like somebody wasn't awake. Okay. Excuse me. With your permission. Sure. I'd just like to remind you all, these microphones do not amplify. And they do record, and I'm sure that this will be well listened to, so please make sure you speak into the microphone just for the purpose of recording, but also speak up for the purpose of letting everybody hear what's being said. And I neglected to ask the clerk to call the case. Okay. Please do. Case number 10-2977, consolidated with 10-3000, American Federation of State, County and Municipal Employees et al. v. James Sledge et al. Now that we're all hopefully alert, Ms. Auerbach, please. Thank you. May it please the Court, I'm Melissa Auerbach for the appellants AFSCME Council 31 and the individual plaintiff's appellants. This appeal is from an order of the Circuit Court dismissing Count 1 and staying Counts 2 and 3 of a three-count complaint. Counts 1 and 2 are alternative counts seeking a determination by either an arbitrator or the Circuit Court of the merits of a contract claim under a public sector collective bargaining agreement. AFSCME in Count 1 seeks a determination by an arbitrator of the merits of the union's grievance alleging that CMS violated the contract by imposing a dental premium, insurance premium contribution on retired state employees. If the grievance is not substantively arbitrable, then AFSCME in Count 2 seeks a court determination of the merits of the contract claim. The Circuit Court effectively denied the union any determination of the contract claim by dismissing Count 1 and staying Count 2. The Circuit Court also stayed Count 3, which is a constitutional claim brought as a class action on behalf of retired state employees. This Court's review of the dismissal of Count 1 is de novo. In Count 1, the union seeks to vacate an arbitrator's award finding that he did not have subject matter jurisdiction to rule on the merits of the retiree dental grievance. The arbitrator's finding is contrary to Section 8 of the Illinois Public Labor Relations Act, which requires that as a quid pro quo for the union's waiving its right to strike during the term of the contract, the employer agreed to submit all disputes arising under the contract to arbitration. The arbitrator found that retirees are not employees under the contract and cannot file grievances, but the grievance here is not filed by the retirees or by employees. It was filed by the union itself. The arbitrator's finding ignores the contract's broad definition of grievance, which is, quote, any difference, complaint, or dispute between the employer and the union or any employee regarding the application, meaning or interpretation of this agreement or arising out of other circumstances or conditions of employment, close quote. This language is extremely broad. In your reply brief, you pointed that out with some emphasis, the presence of the word or between the employer and the union or any employee. Can you tell us why you think that's significant in your reading of that? Right. It's significant because the employees individually can file grievances. Groups of employees can file grievances. The union can file grievances on behalf of employees. But the union itself can also file grievances either on behalf of employees or on its own behalf to resolve contract disputes. And the Section 8 of the IPLRA also requires both that a grievance procedure apply to all employees in the unit, but also that it provide for final and binding arbitration of disputes concerning the administration or interpretation of the agreement unless agreed otherwise. And that language encompasses disputes that may not involve individual employees or even groups of employees. If the retirees, you know, don't have an ability to file a grievance and the union can't file a grievance on their behalf, what happens with the retirees? Well, what the arbitrator here found was that the contract does have provisions regarding retirees. I mean, there's even a section, retiree benefits. And he found that since, in his view, they couldn't file grievances, that they had to resolve their dispute in another forum. Well, the only other forum would be circuit court. Alternatively, the union, because it's the union's dispute, could call a strike if the grievance is not arbitrable. You used the word strike, and that was following my last question. This is a public contract. Right. This is not a private contract. Right. So from that very step, is it not correct that the arbitrator was off? He's totally wrong. He doesn't know what he's arbitrating. He was totally wrong because unlike the private sector under federal labor law where the agreement to arbitrate is a matter of private agreement, and even though there's a strong presumption of arbitrability, there still has to be language supporting the agreement to arbitrate. In the Illinois public sector under this statute, arbitration is statutorily required as the tradeoff for the right to strike. Right. So that's why I asked you before. Where did this guy come from, or why was he allowed to be chosen? It appears he has never done a public contract before. I mean, I don't personally know what his background was prior to this case, other than the procedure is that the parties agree on the arbitrator, and they sometimes agree. So the union agreed to this? The union picked the arbitrator. What experience the union had with this arbitrator before, I don't know if they used him before or not. So the union person wasn't Roe Sharp either. Excuse me, counsel. The retiree benefits are part of the contract. The section, the article, there's an article providing for retiree benefits. There's an appendix that sets forth retiree benefits. And the benefits were negotiated then as part of the contract. The parties have historically negotiated over retiree benefits, and prior to this case had arbitrated a couple disputes regarding retiree benefits. Prior to? Prior to this case. And that was raised to the arbitrator. During the course of the contract. This event occurred prior to the end of the contract. This prior to June of 12 is when this contract technically ends. Right. So this event occurred when in 09 or 10? When the grievance arose. When did the actual? Right. It occurred during the term of the contract. It was after the contract started that the change was made. And the action of CMS was unilateral. It was not negotiated. It was unilateral. Right. It was after the contract started, and it was unilateral. With respect to the argument that, going back to the issue of employees versus union and why that's important that the union can file grievances, there are other types of disputes besides this one where the union might want to file a grievance. And if the grievance procedure and the Labor Act are interpreted narrowly as only allowing employees to file grievances, the union would be foreclosed. For example, the contract in Article VI, Section 2, provides that the employer will allow AFSCME staff representatives reasonable access to employer premises. AFSCME staff representatives are not state employees. They're union employees. If CMS violated that contract provision, the union would have the right to grieve and arbitrate a challenge to the denial of staff representative access to state premises. If the grievance procedure is interpreted as the arbitrator found and CMS argues as only allowing employees to file grievances or the union on behalf of employees, then that provision also could not be enforced. And there are a number of other provisions. Section 6, Article 6, Sections 5 and 7 provide that CMS will provide information to the union on personnel transactions, will make state conference rooms available for union meetings. Article 26, Section 8, provides that CMS will notify the union of new job classifications. And Article 5, Section 8, provides the union has the right to request and receive information relevant to grievances. All of these provisions are provisions that don't apply to employees. So if only employees could file grievances, none of these provisions could be enforced by the union, even though they would be disputes under the contract. So clearly the intent of the contract, broad language, and Section 8's requirement of the tradeoff for arbitration in return for no strike is that all disputes can be arbitrated and that would include disputes over retiree benefits. And tell me how your argument meshes with the State Employee Group Insurance Act, which defines a member as an employee annuitant or a retired employee or survivor and requires that there be group life insurance for members. Well, under the Labor Act, the union can negotiate to have supplementary rights or to negotiate rights that don't violate other statutes. Under Section 25 of the Labor Act, or 15 of the Labor Act, the bargaining agreements on that Public Labor Relations Act actually supersede other statutes. But the union has historically bargained to supplement rights provided by statute, including retirement benefits. And in fact, in Appendix A, there are references both to employees and to members. Employees refers to bargaining employees. Members refers to members of the retirement system. Members of the retirement system. Right. And so members of the union is different than members of the retirement system. Well, members means members. But they overlap. Because members of the retirement system includes, obviously, retirees. Includes retirees, exactly. Members of the Group Insurance Act, rather. Right. And so in Appendix A, where there are references to employees and also to members, those members would include retired employees. All right. Under clear case law, which we cite in our brief, a union's waiver of its statutory right, which include here the right under Section 8 to arbitrate, must be found in clear and unmistakable contract language that expressly excludes the subject matter of the grievance from arbitration. In here, that would require express contract language, excluding retiree benefits or retiree dental disputes from arbitration. No such waiver appears in the contract. CMS did not argue that there was any such waiver, and the arbitrator did not find any such waiver. Rather, the arbitrator focused on the wrong question, which was whether retirees can file grievances, rather than whether there's any clear contract waiver of the right to arbitrate retiree dental disputes. CMS argues in its brief on appeal that the grievance procedure states that arbitrability issues will be determined by the arbitrator. With respect to procedural arbitrability, this provision would be in accord with settled case law that procedural arbitrability issues are to be determined by the arbitrator. With respect to substantive arbitrability, and there's no evidence, because there's no record, as to what kind of arbitrability the contract was intended to apply to, but to the extent substantive arbitrability is involved, under the Uniform Arbitration Act, which is adopted by Section 8 of the Labor Act, the issue of whether grievance is substantively arbitrable is ultimately an issue for the court, as Illinois Courts have recognized, the Supreme Court in the Board of Education Warren Township District 2121 case versus Warren Township High School Federation of Teachers, and in Aspey v. Schwartz, the Illinois Appellate Court case. So even if the union agreed as here to allow the employer to raise the issue of substantive arbitrability in the first instance before the arbitrator, the union could not agree to remove the authority of the courts to decide such issues, since such issue is, under settled case law, an issue for the courts. Let me ask you, he's going to at some point raise the question that not all of the employees or retirees ask the union to negotiate. What is your response, which I suppose goes along with the Exelon case? Well, to the extent of the grievance itself, the grievance is brought by the union, not by employees or retirees. And the arbitration and the arbitrator's award on the merits of the grievance would be binding on the parties to the agreement, which are the union and the employer. That doesn't mean it might not have, as I think the court said in Exelon, some presidential effect on other cases. But what it would be binding on would be the parties to the agreement as an interpretation of the agreement itself for the parties. All right. All right. I'll think of where else I want to go on that. Right. In the Exelon case, which was private sector, and so the arbitration is only by agreement, the Seventh Circuit found that the union was entitled to arbitrary disputes over an employer's change to retiree medical benefits during the contract, where the contract, like the contract here, has a broad grievance definition. And the court noted that the union may resort to its economic weapons with respect to its dispute over retiree benefits. Since the union represents the bargain unit interests also by maintaining retiree benefits. A finding here, therefore, that the retiree dental grievance is not subject to arbitration. Similarly, it would have to mean that the union has the right to strike over such dispute. And under federal case law and the federal labor law, the right to strike by matter of case law is considered the quid pro quo of the agreement to arbitrate. In Illinois, the public sector, this was established as a matter of statutory requirement by Section 8 of the IPLRA, rather than being left only to the private agreement of the parties. With respect to the merits of the case, the merits of the grievance on Count 1 aren't really an issue, because under the cases this Court's decision in the town of Cicero, under the Fourth District Staunton case, the Third District Rock Island case, court is to order arbitration, even if it views the grievance as frivolous. Here, the arbitrator didn't find the grievance to be frivolous. He found that the contract gives retirees rights, but that they have to be enforced in some other form, rather than arbitration. The arbitrator also ignored the fact that the pool of retirees changes as current employees retire, even during the term of the contract. These current employees and future retirees will be affected by the dental premiums when they become retirees, and there's no dispute that as current employees, they're subject to the grievance procedure, even if they want to grieve on their own. In fact, the stipulated issue to the arbitrator on the merits, which the arbitrator did not reach, was did the employer violate the collective bargaining agreement when it unilaterally implemented a monthly contribution for retiree participation in the quality care dental plan. That would apply to both current retirees and future retirees during the contract term. So the arbitrator incorrectly focused on the wrong question. When the right question is asked, which is whether there's any clear waiver of the retiree dental dispute from arbitration, then it's clear that the arbitrator's decision was wrong, and therefore the dismissal of Count 1 should be reversed. With respect to Counts 2 and 3, AFSCME submits that this Court's review is de novo because the Court's stay order, staying Counts 2 and 3, pending labor board proceedings, involves an interpretation of the Illinois Public Labor Relations Act. The Court found, based on its interpretation of the Act, that the Board has expertise in interpreting collective bargaining agreements or in collective bargaining matters. But even under the abuse of discretion standard, the stay order should still be reversed. The Court stayed Count 2, which is the alternative contract claim seeking court determination of the dispute, and Count 3, which is an individual retiree's claim as broad as a class action challenging the imposition of the dental premium payment as an impairment in contract under Article 13, Section 5 of the Illinois Constitution. The Circuit Court found that the Board has primary jurisdiction over such claims. Such finding is clearly incorrect. As to Count 2, CMS in its brief relies on the Central City case, but what the Supreme Court found there was that the Education Labor Board, the other public sector board, has expertise in deciding what constitutes mandatory subjects of bargaining. Not that it has, or that this Illinois Labor Relations Board has expertise in interpreting contracts. The Illinois Public Labor Relations Act, Sections 10 and 11, give the Board jurisdiction over unfair labor practices, but Section 16 provides it suits for violation of contracts are to be brought in Circuit Court after the exhaustion of contract grievance remedies. Section 16 is patterned after Section 301 of the Federal Labor Management Relations Act, which gives federal district courts jurisdiction over contract disputes under federal labor law, even though the National Labor Relations Board has jurisdiction over unfair labor practices. And the U.S. Supreme Court in NLRB v. Strong recognized that arbitrators in the courts are the principal sources of contract interpretation, while the NLRB can remedy unfair labor practices, even though they may arise from the same circumstances. Here, the Illinois Labor Relations Board itself, in the Village of Creve Court case, cited in our brief, itself found that it does not have jurisdiction to rule on breach of contract claims, and that it will only consider a repudiation of a contract, not a breach of contract, to be an unfair labor practice. Also, we cite a number of cases in our brief where Illinois courts have found that two causes of action, particularly involving employment and labor relations under separate statutes or in arbitration in the court, may proceed simultaneously with neither one preempting the other. Here, the board has primary jurisdiction over unfair labor practices, but the unfair labor practice proceeding will not determine the contract dispute. It will determine whether CMS violated a duty to bargain in good faith and what constitutes mandatory subjects of bargaining and can result in a bargaining order, but it won't determine whether the contract was violated. So the circuit court improperly stayed count two. Constitutional claims certainly are clearly within the primary jurisdiction of the circuit court and not the board. The board has no expertise in determining constitutional issues, and the facts relied on in count three involve individual retirees. Some of the retirees are not even covered by the labor law. They may be management people or people who aren't represented by unions, since that count is brought as a class action. The facts do not involve any facts involved in the labor board proceedings. They involve what representations were made to the retirees before they retired. So there was no reason to stay count three pending the board proceedings. So what specific relief are you requesting? So the relief that we request is that this court reverse the circuit court's order dismissing count one of the complaint and remand it to be remanded to a new arbitrator for a hearing on the merits and that this court reverse the stay order of counts two and three and remand those to the circuit court. What is the outcome if the stay is reversed? Can that somebody then run to the circuit court? I mean, in practicality, what we would envision happening would be that the parties would first proceed to arbitration, since count one and two are brought as alternatives. So if arbitration is ordered, and I think CMS had even agreed that below, that we most likely would agree to proceed to arbitration and we wouldn't litigate in court at the same time. Because it does create an issue if the two go in different directions. Right, but the stay order is a stay pending labor board proceedings. That's the order that was entered, and there's no reason to stay the case pending labor board proceedings. Count two was brought as an alternative to count one, so if arbitration is ordered, then there would be no, you know, count two should be stayed pending the arbitration in count one. Okay, thank you very much. Thank you. Thank you. Good morning, Your Honors. Counsel. May it please the Court. My name is Brett Legner. I'm an assistant attorney general, and I represent the defendants' affilies in this matter. Your Honors, this Court should affirm the circuit court's decision dismissing count one and staying counts two and three pending the resolution of the unfair labor practice claims in front of the Illinois Labor Relations Board. Answer my first question to her. This is a public contract, not a private contract. Why did the arbitrator not arbitrate? And forget employee. Give me another reason. Well, I don't think I can outside of employee. The grievance between the union and CMS. Right. Forget employees. What do you have to stand on that? Well, the union, under the terms of the contract. I mean, can I not arbitrate if I'm the arbitrator if it is merely between the union and CMS? Not if the union is not bringing it on behalf of a bargaining unit member. The union only has the standing to bring a grievance on behalf of bargaining unit members. Members of the bargaining unit are defined as employees. That's the construction of the contract. What's your answer to the Exelon case? Exelon involved a situation where the union brought the, first of all, it involved a contract with different language. Right. Language that wasn't as favorable to the union as this one. Well, I disagree with that. But beyond that, that involved a grievance that was brought on behalf of current employees for their future retiree benefits. That's not what happened here. The grievance was brought on behalf of current retirees. That's the problem. That's the issue. Current retirees are not within the classifications that make up. You're a state employee, right? I am a state employee. I'm not a bargaining unit member, but I am a state employee. Okay. So who's going to represent you when you retire and they freeze your salary, your retirement pension? You get no coal. When my pension goes, yes. And I'm preparing for that, believe me. But the, well, it wouldn't be the union. The union has no say. I'm not a bargaining unit member. It would be a class action. I would get a private counsel, and it would be a class action brought on behalf of the retirees. Counsel, if it's your position that the union only has standing if they're representing a bargaining unit member, then what is the union supposed to do if the employee, or in this case the state, if they believe that the state is violating a part of the contract, for example, about the retirees or about a dependent or something else that really doesn't specifically have something to do with a bargaining unit member, but has to do with, say, the union itself, whether the union can organize, for example. If your position is they can only have standing on behalf of bargaining unit members, what happens to all those other parts of the contract where a bargaining unit member is not involved? If it's an issue of whether they can organize, that's a matter that can certainly go to the Labor Relations Board. Like composition of bargaining units is an issue that the Labor Relations Board clearly has. Dependents? Dependents. Dependents aren't members of a bargaining unit. They're in the contract, though. That's correct. They're the third-party beneficiaries that they did not negotiate to be within the scope of the bargaining unit or the arbitrability. Well, didn't the union and the state bargain in the contract for those benefits for the dependents and the retirees? They did, and the union and the state also bargained in the contract. That grievance procedure is for employees, and they defined employees as those classifications listed in Table A. Well, what about that or that's in there, that little two-letter word, or, or the union? That indicates that the employee, where the union will not represent an employee, decides not to grieve an issue that an employee wants, that means the employee can take it to grievance if the union won't do it. But after it goes through that process. But that doesn't mean that the union just gets to raise any issue it conceivably wants under the contract. Even though it's something that has been bargained for in the contract. Even though it's been bargained for in the contract because, again, this language for defining the grievance process has also been bargained for. And so the scope of the grievance process has been equally bargained for. And this is consistent with, sorry, Section 8 of the PLRA, by the way, which provides a grievance process only for issues that concern employees in the bargaining unit. If the arbitrator's decision here is affirmed, would that then allow or empower the state in your judgment to say, well, we don't think the current retirees should have any health benefits, period, not just dental? No. If the arbitrator's decision is affirmed, that means that this doesn't go through the grievance procedure. This doesn't mean that there is no breach of contract claim or constitutional claim. Those are still there. There's not an indication that those are in no way justiciable, that they can't be challenged by the correct plaintiffs in a class or whatever. A finding of non-arbitrability doesn't impact those rights to pursue the correct action in that form. Certainly not. I would add, with respect to Section 8 of the PLRA, last July, the 4th District issued a decision. This came out a couple months after the briefing was concluded in this case, and I'm going to be, I just want to flag it in that I'm going to be submitting it with a motion to cite a supplemental authority this afternoon in which the 4th District construed Section 8 and made clear that it only applies to grievances concerning employees of bargaining units. We'll allow you to do that, and we'll allow the union to respond. Thank you, Your Honor. Under Count 1, when a party is seeking to vacate an arbitration award, the court looks at the arbitration award with a very deferential standard of review. As this court held in the NDOCA decision, so long as the arbitrator engaged in construction of the collective bargaining agreement, even if this court thinks that the construction was wrong, so long as the arbitrator engaged in the construction of the agreement, it must be upheld. And clearly the arbitrator construed the collective bargaining agreement in this case. The arbitrator looked to the definition of employee in the collective bargaining agreement, which defined an employee as a classification covered by the contract and realized that retirees are not classifications covered by these collective bargaining agreements. And that's consistent with a number of authority that the defendants have cited in their brief, finding that retirees are not employees under collective bargaining agreements. Additionally, the arbitrator construed the collective bargaining agreement provision describing bargaining unit members, defining bargaining unit members as, which are covered by the collective bargaining agreement, as employees. Bargaining unit members are defined as employees. Employees are defined as those classifications listed in the contract, which does not include retirees. Article 5 defines the grievance process as any difference or dispute between an employer and the union or any employee. And as we discussed, and Judge Paczynski, your questions went to the issue of, well, what does this mean? And we engaged in contract discussion dialogue, but that's the same contract discussion or contract construction that the arbitrator went into. Again, the question isn't whether this Court disagrees with the arbitrator's construction. The question is, did the arbitrator construe the collective bargaining agreement? And if it did, because the parties negotiated and agreed to submit this question to the arbitrator, the arbitrator's decision, the arbitrator's construction, is what controls. And again, the parties did agree to submit this question of arbitrability to the arbitrator. The arbitrator, selected by the parties, the grievance lists the arbitration issues, the statement of the issues, and this is at page C125 of the record or A220 of the appellant's appendix. First issue, is the grievance arbitrable? The parties clearly submitted the issue of arbitrability to this arbitrator. Additionally, at page A39 of the separate appendix, describing the arbitration procedure, the collective bargaining agreement states, questions of arbitrability shall be decided by the arbitrator. If a question of arbitrability is raised, and the arbitrator must first make a determination of the arbitrability of the dispute, unless the issue is of such a nature that a determination cannot be made at the hearing. Questions of arbitrability. This isn't just procedural arbitrability. This is a substantive arbitrability, a threshold arbitrability determination. It's set forth in the collective bargaining agreement. The parties stipulated that that was a statement of the issue before the arbitrator. The parties submitted the question of arbitrability to the arbitrator. The arbitrator's construction of the collective bargaining agreement to determine that question is subject to the same deferential standard of review as the arbitrator's construction of the collective bargaining agreement to resolve any other substantive issue. And that's consistent with the first options case, the U.S. Supreme Court case, that defendants cited in their brief, that indicate when the question of arbitrability is one that's given to the arbitrator, the same deferential standard of review applies. What's your response to the argument of the union from the reply brief at page 4 where they say, even the deferential review required by these cases encompasses plaintiff's argument that the arbitrator did not have the authority to refuse to decide the merits of the grievance. What's your response to that? Well, the response is that that's incorrect. Certainly, the deferential standard of review is still a standard of review. Right. So this Court still plays a role to determine if the arbitrator. One would hope. Absolutely. To determine if the decision drew assessments from the contract, if the arbitrator engaged in construction of the contract. But the union is also tying this into their broader Section 8 argument, that even if there's this arbitrability provision, you have to look at the arbitrability decision in light of the broader PSA. Does that go to the Fourth District case that you just mentioned? In part, yes, it does. Okay. Do you have a cite for that case? I do, absolutely. That is, the case is called International Brotherhood of Electrical Workers versus the City of Springfield. The cite is 2011, ILAP 4th, 100905. 100? 905. And just to be clear, how about if we give you 14 days to brief the applicability of that case, and then the union will have 14 days in response? That would be great. Thank you very much, Your Honor. I have a question, counsel. Yes. If the main collective bargaining agreement prohibits CMS from imposing any decrease in the benefits received under the agreement during the terms of the agreement, and you believe, as the union does, that adding a cost to retirees' dental benefits is a decrease in their benefit that was negotiated under the terms of the contract, then what stops CMS from just unilaterally changing any part of the contract they want to? CMS can still be liable for a breach of contract. There's a difference between whether it's an arbitral decision and a breach of contract. Right. And we haven't gotten into the issue, and it hasn't been explored by the parties yet as to whether there was a contract breach here. Well, that's because the arbitrator wouldn't listen to it. The arbitrator wouldn't get into the issue, and the court has at the moment stayed at the breach of contract claim that's brought in circuit court as probably the proper form pending the resolution of the unfair labor practice claim. My question is, if the state believes that retirees are not covered by this contract, even though they're in the contract, then why have them in the contract? Why are they even in there? Why negotiate that part of it? The position today is not that the retirees are not part of the contract, nor that the retirees, the position is not that the retirees are not third-party beneficiaries. And as you know from contract law, third-party beneficiaries have certain contract rights. They just can't grieve in the process. The position today is that they can't grieve in the grievance process. And that's because of your understanding of the two-letter word or means that the union itself on its own can't grieve something that comes up that changes the contract. They can only do it on behalf of members of the bargaining group. Yes. And I wouldn't say that that's only my personal view of it. It's the state's position. It's the state's position. It's what the arbitrator found in construing the contract. We're not laying that on you. Thank you. But it's what the arbitrator found in construing the contract. And so looking at it with that kind of broad deferential lens that we need to, you have that. But, yes, that is an important part of the determination that the union, under the contract, may bring a claim on behalf of its bargaining unit members, and its bargaining unit members are employees. So just to clear up the muddled man that you're looking at now, what the state is suggesting then is affirm the decision of the arbitrator saying that they don't have the right to grieve these retirees and then allow the retirees to pursue a breach of contract claim in the circuit court, taking it out of the land of arbitration. Essentially, yes. There is a slight hitch here. Could the current workers, state workers, strike on that basis then? Is this empowering the state workers to strike? If the retirees have no basis to grieve, can employees strike on their behalf and give them a voice? Wouldn't that enable this? What the state wants, let them sue in circuit court, and then we can see the picket signs out in front of the Thompson Center. The current employees can grieve, can grieve benefits. Trust me, they're probably grieving now in anticipation of the fact that they're going to get hammered later on. There is no doubt about that. There is no doubt about that. I wasn't trying to be churlish. I was really asking what I thought was a fair question, and that is if the retirees cannot grieve as the state urges and as the arbitrator obviously found because they're not employees, can not then the employees of the state go out and strike and say you can't do that to the current retirees? Because that's not what we bargained for. Doesn't that enable and in fact just license the state employees to strike on this issue? No, because the state employees gave up their right to strike in exchange for the grievance procedure for them, for themselves, for employees. Everybody who is an employee is a potential retiree. This is true, but they also negotiated the definition of employee and they negotiated the definitions of the grievance procedure. Did they agree to not ever be able to grieve on behalf of retirees? Is there a specific waiver of that? I mean, if this were a statute that we were looking at, we could look at legislative history. I know it's a contract, so we don't really have the extrinsic information here to figure out whether or not the parties specifically did bargain on that issue. Did they negotiate on that issue? We don't have that extrinsic evidence. We do not have that evidence. As we'll see, the 4th District found that it would be absurd to require the parties to anticipate every specific grievance that might come up and list it. But it would also be, it seems quite frankly a little bit absurd to think that just by coming to the agreement on the definition of employees, the people who were bargaining for it said that it's open season on retirees. That doesn't seem to be particularly clever either. Again, it's not open season on retirees because they provided contract rights for retirees. And those rights are still enforceable. Just because they're not enforceable in the grievance procedure. So if they have the contract, they should be allowed to strike. If they can't grieve, they should be allowed to strike. Retirees? No. The current employees. The current employees gave up the right to strike for the grievance procedure for their issues. I don't want to get into a circular argument with you. Why don't you go ahead and wrap up and tell us what you think we ought to do. Okay. May I address the estate question? Absolutely. Thank you. The issuance of the estate was proper, Your Honors, and it was not an abuse of discretion under the doctrine of primary jurisdiction. The State does not contend that the Circuit Court could not address the contract issues or the constitutional issues. The Circuit Court has the jurisdiction to address those issues that were raised. The point, though, is that because of the unfair labor practice charge that's been filed before the Illinois Labor Relations Board, the Circuit Court should hold off until the resolution of that to see what happens. The reason for that is part of the relief that's requested from the Labor Relations Board is an order of arbitration. Part of the relief they want is the, is the, under the, is the unfair labor practice give us the right to arbitrate it? That's right. They want an order requiring the State to bargain about changes in State insurance charges for retirees and future retirees before implementing any such changes. They want restoration of the status quo ante and appropriate monetary relief, and that's relating specifically to the October 1, 2009, imposition of the dental premiums. That's the relief requested in the unfair labor practice charge. They could get that relief, and if they get that relief from the Labor Relations Board, then that would substantially change the landscape of what the Circuit Court would do. In fact, counsel even admitted today that if count one is reversed, they would go to arbitration first and not press the other two counts. They could get that arbitration in the unfair labor practice charge. That's why it makes sense to wait for that to be resolved. Or they could get it if we reversed what the arbitrator did. I'm not. That's my, you know, that's not my optimal solution, but that is the, that is true. Okay, all right. And my last point of that is that the Labor Relations Board is an administrative agency that has specialized expertise in collective bargaining matters. It gets to decide, for instance, whether the failure to bargain on something is an unfair labor practice, and that is the nature of the issue that's here. It's an agency with specialized expertise that under primary jurisdiction, the Circuit Court, even though it has jurisdiction to resolve and to entertain the contract and constitutional issues, should wait and defer to the agency determination. If your honors have no other questions, I ask that you affirm the dismissal of count one and affirm the stay of counts two and three pending resolution of the Illinois Labor Relations Board unfair labor practice charge, after which, after that's resolved, those claims would then become alive again in Circuit Court. Thank you very much for your time. Thank you. Why don't we start with that? Why don't we just let the Labor Relations Board figure all this out? Well, the Labor Relations Board does not have authority to compel arbitration. Under the Public Labor Relations Act, that authority is specifically invested in the Circuit Court. Under the Education Labor Relations Act, that board does have authority to compel arbitration and to vacate arbitration awards, but this statute specifically incorporates Uniform Arbitration Act, under which actions to compel arbitration, vacate arbitration awards, are all in the Circuit Court, and the Labor Board itself has said that it doesn't have authority to, and I think we say those cases in our brief, does not have authority to compel arbitration or to stop a suit from Is your colleague, though, correct that that's one of the things that you asked for? No. In terms of relief? No, no. We asked for an order to bargain, and we did ask for restoration of status quo ante, but we didn't ask for arbitration because that's not something the board can order, and so it's a separate cause of action. The board, in fact, the board itself often will defer contract claims to an arbitrator because it views it as not its main province to interpret collective bargaining agreements, so it's a statutory issue of what constitutes mandatory subjects of bargaining, and the board can remedy them for labor practices. We did not ask for an order to arbitrate, and that's for the court to order. With respect to the argument that, again, that the union can only bring grievances on behalf of bargaining unit members, in addition to the broad grievance definition, the contract also contains permissive language saying the union may process grievances on behalf of employees, but the full language in Article V, Section 1B is actually that grievances may be processed by the union on behalf of an employee or on behalf of a group of employees or itself, and CMS left that part out, but, again, that's permissive in addition to the fact that any dispute constitutes a grievance. So the union clearly has the right under this contract and Section 8 to bring a grievance on behalf of itself because the union has its own interest in protecting the contract that it's bargained and maintaining the integrity of that contract, even apart from the interest of its members or retirees. With respect to the arbitrability and the argument that the arbitrator's substantive arbitrability finding should be deferred to, what if there were, you know, there could be another off-the-wall finding from an arbitrator that discharge grievances aren't arbitrable. The union routinely arbitrates grievances whether employees are discharged for just cause. If an arbitrator all of a sudden decided discharge grievance weren't arbitrable, we'd be bringing them all in circuit court, we'd bog down the circuit courts, or the union could go strike on them, and the fact that an arbitrator finds this doesn't mean it's the final say. Rather, it's the court's authority to make that finding. And here, because it's not by, you know, the cases, the commercial cases relied on by the state are not applicable in commercial contract cases and in federal labor law cases. It's purely private agreement of the parties whether there's an arbitration. It has to be agreed to by the parties in the contract. There's no statutory mandate. Here, the federal scheme, you know, where it's understood that arbitration is positive and it avoids unnecessary strife and strikes, it was adopted as a matter by the legislature as part of the statute here, and that's not true in those commercial cases that are relied on. Let me ask you a question. He addressed the Fourth District case. I don't know if you're able to or prepared to say anything, but if you are, I'd like to hear it. If not, then just say you'll brief it. Yeah, I'll have to brief it because I have not read that case. Okay. With respect to the retiree cases that the state relied on in its brief, those cases essentially found, one, that a union doesn't have the duty to represent retirees and so retirees don't and retirees themselves can't file grievances under the contract cited and therefore that the retirees don't have to exhaust contract grievance remedies before they bring their own circuit court action. Those issues aren't here because the union did file a grievance, so there's no issue of unions not representing retirees and there's no issue of retirees wanting to bring their own action because the union is not doing anything. So those issues aren't here in this case and that's not the issue. The issue is whether the union can arbitrate the grievance it did file, that it did choose to file to protect both its current employees and retirees, not whether it had to do that. And with respect to the issue of the right to strike, in the U.S. Supreme Court textile workers versus Lincoln Mills case, which we cited, the Supreme Court found the right to strike to be the quid pro quo for, the waiver of the right to strike to be a quid pro quo for submitting disputes to arbitration in the private sector and where there is no, you know, if a private sector contract, for instance, had a just cause for discharge provision but no arbitration of discharges, then the union could strike over discharges. So here, anything that's not subject to arbitration, the union would be able to strike over. You know, there could be a no strike clause, but it could be not coterminous with the arbitration clause. But that wasn't obviously what was intended by the statutory mandate to have both. And so if there aren't any other questions, I thank you. Okay. Thank you very much. Great briefs and excellent argument this morning. Brief that other issue, and then once we've received both briefs on that, we'll get to work on getting an opinion out to you. Okay? Thank you very much. We're adjourned.